**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JANE DOE | : | |
| Plaintiff | : | |
| | : | **No. 2:19-cv-02881-KSM** |
| v. | : | |
| | : | |
| THE HOSPITAL OF UNIVERSITY OF | : | **CIVIL ACTION** |
| PENNSYLVANIA, THE TRUSTEES OF | : | |
| THE UNIVERSITY OF PENNSYLVANIA, | : | |
| THE UNIVERSITY OF PENNSYLVANIA, | : | |
| THE UNIVERSITY OF PENNSYLVANIA | : | |
| HEALTH SYSTEM, DR. OCTAVIA | : | |
| PICKETT-BLAKELY, JOHN DOES 1-10, | : | |
| AND, POLICE OFFICERS RICHARD | : | |
| ROES 1-10 | : | |
| | : | |
| Defendants. | : | |

## ORDER

AND NOW, this _____ day of _____, 2020, upon

consideration of the Motion of Plaintiff, Jane Doe, for Leave to Amend Under Rule 15

(doc. 36), and the opposition thereto filed by the Penn Defendants, it is hereby

**ORDERED** that the Motion is **DENIED**.

**BY THE COURT:**

_____
The Hon. Karen S. Marston

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JANE DOE | : |
| Plaintiff | : |
| | : **No. 2:19-cv-02881-KSM** |
| v. | : |
| | : |
| THE HOSPITAL OF UNIVERSITY OF | : **CIVIL ACTION** |
| PENNSYLVANIA, THE TRUSTEES OF | : |
| THE UNIVERSITY OF PENNSYLVANIA, | : |
| THE UNIVERSITY OF PENNSYLVANIA, | : |
| THE UNIVERSITY OF PENNSYLVANIA | : |
| HEALTH SYSTEM, DR. OCTAVIA | : |
| PICKETT-BLAKELY, JOHN DOES 1-10, | : |
| AND, POLICE OFFICERS RICHARD | : |
| ROES 1-10 | : |
| | : |
| Defendants. | : |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2020, upon

consideration of the Motion of Plaintiff, Jane Doe, for Leave to Amend Under Rule 15

(doc. 36), and the opposition thereto filed by the Penn Defendants, it is hereby

**ORDERED** that the Motion is **GRANTED IN PART and DENIED IN PART.  IT IS**

**FURTHER ORDERED** that:

1. Plaintiff shall not be permitted to proceed on any claims against Dr. Norman

   Randolph;

2. Plaintiff shall not be permitted to proceed against Dr. Octavia Pickett-Blakely on

   Counts V (Reckless Conduct), VI (Gross Negligence), VII (Negligence), XVII (14th

   Amendment), XVIII (Title VII), XXII (ADA Title III), or XXIII (Rehabilitation Act);

3. Plaintiff shall not be permitted to proceed against Defendants The Trustees of the

   University of Pennsylvania, The Hospital of the University of Pennsylvania, The

University of Pennsylvania Health System, or Dr. Octavia Pickett-Blakely on

Counts VIII through XVII (4th and 14th Amendments).

4. Plaintiff shall not be permitted to proceed against any of the Penn Defendants or

   putative defendants on Count XXI (ADA Title II).

5. Plaintiff shall be permitted to file a Second Amended Complaint and is directed to

   file a Second Amended Complaint in accordance with this Order within 10 days

   of the date of this Order.

6. The Penn Defendants shall file a response to the Second Amended Complaint in

   accordance with the Federal Rules of Civil Procedure.

**BY THE COURT:**

_____

The Hon. Karen S. Marston

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JANE DOE | : |
|           Plaintiff | : |
| | :   **No. 2:19-cv-02881-KSM** |
|     v. | : |
| | : |
| THE HOSPITAL OF UNIVERSITY OF | :   **CIVIL ACTION** |
| PENNSYLVANIA, THE TRUSTEES OF | : |
| THE UNIVERSITY OF PENNSYLVANIA, | : |
| THE UNIVERSITY OF PENNSYLVANIA, | : |
| THE UNIVERSITY OF PENNSYLVANIA | : |
| HEALTH SYSTEM, DR. OCTAVIA | : |
| PICKETT-BLAKELY, JOHN DOES 1-10, | : |
| AND, POLICE OFFICERS RICHARD | : |
| ROES 1-10 | : |
| | : |
|           Defendants. | : |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
<u>PLAINTIFF'S MOTION FOR LEAVE TO AMEND UNDER RULE 15</u>**

Defendants, The Trustees of the University of Pennsylvania (incorrectly identified as "The University of Pennsylvania") ("Penn"), The Hospital of University of Pennsylvania ("HUP"), The University of Pennsylvania Health System, and Dr. Octavia Pickett-Blakely (collectively, the "Penn Defendants"), hereby oppose Plaintiff's Motion for Leave to Amend Under Rule 15 (doc. 36).

Plaintiff requests leave to amend the complaint for the third time. She now seeks to add six defendants, ten counts, including new constitutional claims that could have been filed from the start, and multiple new factual allegations. Plaintiff's untimely proposed amendment should be prohibited altogether because it violates this Court's Scheduling Order. In the alternative, the proposed amendments that are futile and prejudicial should be rejected.

I.     **BACKGROUND AND PROCEDURAL POSTURE**

Plaintiff commenced this action with the filing of a Complaint on July 2, 2019
against the Penn Defendants.  (Doc. 1.)  In her Complaint, Plaintiff accused the Penn
Defendants of the intentional torts of assault, battery, intentional infliction of emotional
distress, false imprisonment, and privacy violations; medical malpractice; and
employment discrimination under Title VII of the Civil Rights Act, the Americans With
Disabilities Act ("ADA"), and the Rehabilitation Act.  (Id.)

Following a series of letters to the Court about the bases for dismissal of certain
of Plaintiff's claims, in accordance with Judge Goldberg's policies[1], Plaintiff filed an
Amended Complaint on October 3, 2019 (doc. 19).  The Amended Complaint asserted
claims of: (i) assault; (ii) battery; (iii) intentional infliction of emotional distress; (iv) false
imprisonment; (v) reckless conduct; (vi) gross negligence; (vii) negligence; (viii) violation
of right of privacy; (ix) violation of Title VII; (x) wrongful termination; (xi) violation of Title
I of the ADA; (xii) violation of Title III of the ADA; and (xiii) violation of the Rehabilitation
Act.  (Id.)  The Penn Defendants filed a Partial Motion to Dismiss the Amended
Complaint (doc. 23), which motion is fully briefed and pending before this Court.

On March 12, 2020, the Penn Defendants served their initial disclosures upon
Plaintiff.  (The Penn Defendants' Initial Disclosures are attached as Exhibit 1.)  As
required by Rule 26(a), the Penn Defendants identified the persons likely to have
discoverable information that may be used to support the claims and defenses in this
case.  (Id.)

---

[1] This case was reassigned to The Honorable Karen S. Marston on February 27, 2020
(doc. 28).

This Court held a Rule 16 telephonic conference on March 13, 2020 and issued a Scheduling Order the same day (doc. 31).  This Court's Scheduling Order required that all motions to amend the complaint and to join or add additional parties be filed by March 30, 2020.  (Id. at ¶ 2.)  This Court further provided:

> Absent good cause shown, after March 30, 2020—and no later than May 13, 2020—the parties may amend their pleadings only to rename, add, or remove named parties in this case. Absent good cause shown, any motion to amend after March 30, 2020 may not alter the factual or legal allegations in the pleadings.

(Id. at n.1.)  Under this Court's current Scheduling Order, the discovery end date is five weeks away and Plaintiff has not even provided responses to the most basic discovery to allow the parties to begin meaningful discovery.[2]

On May 13, 2020, having done no due diligence or propounded any discovery upon the Penn Defendants[3] – but instead relying solely on the Penn Defendants' Initial Disclosures served two months earlier – Plaintiff first provided the Penn Defendants' counsel with a copy of the proposed Second Amended Complaint.  The proposed Second Amended Complaint does much more than "rename, add, or remove named parties."  Rather, the Second Amended Complaint adds six defendants, ten counts, and fourteen pages of new allegations.  (Doc. 36-1 at Exhibit A.)  Specifically, the Second Amended Complaint adds six defendants: Dr. Randolph Newman[4], HUP Security

---

[2] This Court has ordered Plaintiff to provide responses to the Penn Defendants' interrogatories and document requests by June 5, 2020.  (Doc. 37.)

[3] Plaintiff did not propound discovery on the Penn Defendants until May 29, 2020.

[4] The anesthesiologist's name is actually Dr. Norman Randolph.  He will be referred to as "Dr. Randolph" throughout this opposition.

3

Officer Nicholas Cattolico, HUP Security Officer Jenvoir Chin, Penn Police Officer Christopher Denschuick, Penn Police Officer John Alexander, and Penn Police Officer Nick DiPallo, all of whom were named in the Penn Defendants' Initial Disclosures as merely having knowledge of the allegations or being present for some portion of the incident alleged in the complaint. Notably, Dr. Randolph was clearly identified in the medical records as having been involved in Plaintiff's care at the time of the events at issue, which records have been in the possession of Plaintiff and her counsel since the outset of this litigation. See original Complaint (doc. 1) at ¶¶ 18 (referencing the absence of certain information from Plaintiff's medical records), 85 (same). The proposed Second Amended Complaint also includes 23 counts (10 more than the 13 counts in the Amended Complaint), including new counts based on the Fourth Amendment, Due Process, and Equal Protection (Counts VIII-XVII).

Because Plaintiff's unjustifiably untimely proposed amendment violates this Court's Scheduling Order, leave to amend should be denied on that basis alone. In the alternative, the newly asserted futile and prejudicial claims should not be permitted to proceed.

## II.    ARGUMENT

### A.    Legal Standard

At this phase of the case, Rule 15 of the Federal Rules of Civil Procedure permits amendment only with the written consent of the opposing party or leave of court. F.R.C.P. 15(a)(2). While the court "should freely give leave when justice so requires," the court is not required to do so when such an amendment would be inequitable or futile. Great Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 174

4

(3d Cir. 2010) (affirming the District Court on the ground that granting leave to amend would have been futile because a third proposed amended complaint would have been prejudicial to defendants).  Futility "means that the complaint, as amended, would fail to state a claim upon which relief could be granted."  Id. at 175.  The standard for assessing futility is the "same standard of legal sufficiency as applies under [Federal] Rule [of Civil Procedure] 12(b)(6)."  Id. at 175, quoting Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000).  In determining futility, the court will take all pleaded allegations as true, in the light most favorable to the plaintiff.  Should the Court refuse to grant leave to amend, however, it has not abused its discretion where pleading deficiencies would not have been remedied by proposed amendments.  Id.

Claims that are otherwise time-barred may be rescued if they are deemed to "relate back" to the date of the original pleading, but only when certain conditions are met.  F.R.C.P. 15(c)(1).  When amendment is sought to change the party or naming of the party, the amending party must establish that, within 90 days of filing the complaint, the party to be brought in by amendment (i) received notice of the action such that it will not be prejudiced in its defense on the merits, and (ii) knew or should have known that the action would have been brought against it, "but for a mistake concerning the proper party's identity."  F.R.C.P. 15(c)(1)(C).[5]  See Singletary v. Penn. Dep't of Corr., 266 F.3d

---

[5] Because Rule 15(c) is at issue, Plaintiff's citation to Garrett v. Wexford Health, 938 F.3d 69 (3d Cir. 2019) is inapplicable.  In Garrett, the Court reviewed a request to amend under Rule 15(d), entitled "Supplemental Pleadings."  Rule 15(d) is used when a party seeks to add a supplemental pleading regarding events that happened after the date of the pleading to be supplemented.  Here, Plaintiff does not seek to file a supplemental pleading about events that happened after the filing of the original Complaint on July 2, 2019.  Rather, Plaintiff seeks to amend the Complaint and take advantage of the relation back doctrine to salvage otherwise time-barred claims.

186, 194 (3d Cir. 2001).[6]  Leave to amend may be denied when the moving party has demonstrated "undue delay, bad faith or dilatory motives or the amendment is futile or prejudicial."  Lake v. Arnold, 232 F.3d 360, 373 (3d Cir. 2000).

The Penn Defendants do not dispute that the proposed amendments arise from the same transaction or occurrence alleged in the original Complaint, nor do the Penn Defendants dispute that the newly-named Defendants share counsel with the original Defendants.  What is disputed, however, is that Plaintiff should be permitted to take advantage of the benefits of the relation back doctrine on claims that are futile, prejudicial, and in violation of this Court's Scheduling Order.

## B.  Plaintiff's Proposed Second Amended Complaint Violates this Court's Scheduling Order.

This Court's Scheduling Order of March 13, 2020 required that all motions to amend the complaint and join or add parties be filed by March 30, 2020.  (Doc. 31 at ¶ 2.)  "Absent good cause shown," any amendment after March 30, 2020 was solely for the purpose of renaming, adding, or removing named parties; no factual or legal allegations were to be altered.  (Id. at n.1.)  Nevertheless, Plaintiff filed the instant motion on May 22, 2020, in which Plaintiff alters the factual and legal allegations in the Complaint, adds parties, and adds claims.  (Doc. 36.)  Plaintiff's motion does not even attempt to set forth good cause for the late filing.  Because Plaintiff's proposed amendment violates this Court's March 13, 2020 Order, Plaintiff's motion should be denied in its entirety.

---

[6] The time period for serving the complaint in Rule 4(m) was changed from 120 days to 90 days in 2015, after Singletary, 266 F.3d 186.

C.  **Plaintiff Should Not Be Permitted to Assert Claims Against Dr. Randolph.[7]**

The Second Amended Complaint seeks, for the first time, to join Dr. Randolph,

the anesthesiologist who was involved in Plaintiff's colonoscopy on February 20, 2018.

(Doc. 36-2 at ¶ 16.)  Plaintiff attempts to assert the following claims against Dr.

Randolph:

- Assault (Count I)

- Battery (Count II)

- Intentional Infliction of Emotional Distress (Count III)

- False Imprisonment (Count IV)

- Reckless Conduct (Count V)

- Gross Negligence (Count VI)

- Negligence (Count VII)

- Violation of 14th Amendment Due Process – Failure to Intervene (Count XVII)

- Violation of Title VII – Sex Discrimination (Count XVIII)

- Violation of Title II of the ADA (Count XXI)

- Violation of the Rehabilitation Act (Count XXIII).

---

[7] When defense counsel tried to confer with Plaintiff's counsel about adding Dr. Randolph to this lawsuit, we noted that there are consequences to naming doctors in lawsuits, including reporting such lawsuits to the state medical board. 40 P.S. § 1303.903.

**1.  All of Plaintiff's Claims Against Dr. Randolph are Time-Barred, and Plaintiff is Not Entitled to Salvage those Claims with the Relation Back Doctrine Because She Delayed in Bringing these Claims.**

The tort law claims asserted by Plaintiff against Dr. Randolph in Counts I through VIII are subject to a two-year statute of limitations.  42 Pa. C.S. § 5524(1) and (2).  The 14th Amendment Due Process claim is also subject to a two-year statute of limitations. Garvin v. City of Phila., 354 F.3d 215, 220 (E.D. Pa. 2003).  The incident at issue in the proposed Second Amended Complaint occurred on February 20, 2018.  Plaintiff's motion for leave to file the Second Amended Complaint was not filed until May 22, 2020.  (Doc. 36.)  Therefore, Plaintiff's claims against Dr. Randolph are time-barred unless salvaged by the relation back doctrine.  Garvin, 354 F.3d at 220 ("The naming of a John Doe defendant in a complaint does not stop the statute of limitations from running or toll the limitations period as to that defendant."), citing Talbert v. Kelly, 799 F.2d 62, 66 n.1 (3d Cir. 1986).

The relation back doctrine is not intended to benefit plaintiffs who were "aware of the identity of the newly named parties when she filed her original complaint and simply chose not to sue them at that time."  Garvin, 354 F.3d at 221-22.  When the failure to name a prospective defendant in the original complaint was the result of a "fully informed decision as opposed to a mistake concerning the proper defendant's identity, the requirements of Rule 15(c)(1)(C)(ii) are not met."  Goldberg v. Nimoityn, et al., No. CIV.A. 14-980, 2014 U.S. Dist. LEXIS 169899, at *13 (E.D. Pa. Dec. 9, 2014) (finding that plaintiff could not add a new party when plaintiff was well aware of which doctors were in charge of the Decedent's care and which doctors made the objectionable decisions that allegedly led to the Decedent's death and made the informed decision to

8

not sue them, as opposed to a mistake.  Thus, plaintiff failed to satisfy the elements of the relation back doctrine).  See also Lundy v. Adamar of New Jersey, Inc., 34 F.3d 1173, 1183 (3d Cir. 1994) (stating "[w]here there is a basis for the plaintiff to assert liability against the party or parties name[d] in a complaint and there is no reason for another party to believe that the plaintiff did anything other than make a deliberate choice between potential defendants, courts have consistently held that the third requirement of Rule 15(c)(3) is not met").

In the original Complaint, Plaintiff pled that information regarding the hospital incident was missing from Plaintiff's medical records and accused the Penn Defendants of falsifying the medical records.  (Doc. 1 at ¶¶ 18, 85.  See also Amended Complaint (doc. 19) at ¶¶ 18, 85; proposed Second Amended Complaint (doc. 36-2) at ¶ 113 (quoting from and inserting a portion of the medical records).)  Certainly, if Plaintiff had access to her medical records – enough to identify missing information and quote from them – then she had access to Dr. Randolph's name and identity, which appear throughout her medical records as the anesthesiologist involved in Plaintiff's care.  For reasons unexplained, Plaintiff chose not to name or identify Dr. Randolph in the original or Amended Complaint, and instead waited until nearly one year into this lawsuit to bring such claims with only five weeks of discovery remaining under the Court's current Scheduling Order.  Plaintiff's claims against Dr. Randolph are time-barred and cannot be salvaged by the relation back doctrine.

**2. Plaintiff's Claims for Negligence, Gross Negligence, and Reckless Conduct are Medical Malpractice Claims that are Barred by Plaintiff's Failure to Timely File a Certificate of Merit.[8]**

Pennsylvania law, as applied to medical malpractice claims asserted in federal court, requires that a plaintiff asserting professional liability claims against licensed professionals file a certificate of merit within sixty days of filing a complaint.  Pa.R.C.P. 1042.6; Hasty v. Cty. of Montgomery, No. 12-4335, 2014 U.S. Dist. LEXIS 27147, ** 25-26 (E.D. Pa. Mar. 4, 2014) (plaintiff must file a certificate of merit within sixty days of filing a complaint asserting a claim for professional negligence); Liggon-Redding v. Estate of Sugarman, 659 F.3d 258, 262-63 (3d Cir. 2011) (holding that the certificate of merit requirement is substantive law, and thus applies to state law medical negligence claims filed in federal court).  Plaintiff in this case has never filed a certificate of merit. On September 9, 2019, in accordance with Pa.R.C.P. 1042.7, the Penn Defendants filed a Praecipe for Entry of Judgment of Non Pros based on Plaintiff's failure to file a certificate of merit.  (Doc. 16.)  Furthermore, Plaintiff's counsel admitted during a telephonic conference with Judge Goldberg on September 10, 2019 that she was unable to retain an anesthesiologist to support a certificate of merit.

As a result of Plaintiff's failure to obtain a certificate of merit, Plaintiff removed the phrase "medical malpractice" from the Amended Complaint and instead re-casted her medical malpractice claims as claims based on negligence, gross negligence, and reckless conduct.  (Amended Complaint (doc. 19) at Counts V, VI, and VII.)  Plaintiff seeks to assert the same claims based on negligence, gross negligence, and reckless

---

[8] The same argument is set forth in the Penn Defendants' Partial Motion to Dismiss as to Dr. Pickett-Blakely (doc. 23 at § IV.B) and still applies with equal force to Dr. Pickett-Blakely as well.

conduct in the proposed Second Amended Complaint against all Defendants, including Dr. Randolph, a newly-named defendant.  (Doc. 36-2 at Counts V, VI, and VII.)  Plaintiff should not be permitted to circumvent the requirement for a certificate of merit by re-casting her medical malpractice claim as negligence-based claims. The filing of an amended complaint does not alter Plaintiff's obligation to file a certificate of merit within 60 days of the original complaint.  See Ditch v. Waynesboro Hospital, 917 A.2d 317, 325-25 (Pa. Super. Ct. 2007), aff'd, 609 Pa. 464 (2011) ("Since [plaintiff] raised a professional negligence claim in her original complaint, she was obligated to file a [COM] within sixty days of her filing of the original complaint"); O'Hara v. Randall, 879 A.2d 240, 244-45 (Pa. Super. Ct. 2005); Hoover v. Davila, 862 A.2d 591, 594 (Pa. Super. Ct. 2004).

Where a complaint is predicated upon facts "constituting medical treatment that involves the diagnosis, care, and treatment by licensed professionals," the action must be characterized as a professional negligence claim, i.e., medical malpractice, and not ordinary negligence.  Grossman v. Barke, No. 597 WDA 2003, 868 A.2d 561, 569 (Pa. Super. Ct. Feb. 3, 2005) ("conduct is considered to be malpractice … when it constitutes medical treatment, that is, when it involves diagnosis, care and treatment by licenses medical professionals.").  In determining whether a claim is one of medical malpractice versus one of ordinary negligence, the Court must consider (1) whether the claim pertains to an action that occurred within the course of a professional relationship; and (2) whether the claim raises questions of medical judgment beyond the realm of common knowledge and experience.  Grossman, 868 A.2d at 570.  Ordinary-negligence claims tend to raise issues within the common knowledge and experience of a

11

layperson, whereas negligence of a physician is outside the bounds of the ordinary knowledge and experience of laypersons.  Id. at 566-67.

In Counts V, VI, and VII of the proposed Second Amended Complaint, Plaintiff asserts that:

> Defendants owed a duty and duties to Ms. Doe, including but not limited to treating her sensitivity to anesthesia competently, respecting the information she conveyed regarding her recovery, treating the difficult recovery completely and to do all that without further harming her or destroying her employment.

(Doc. 36-2 at ¶ 145, ¶ 149, ¶ 153.)

While Plaintiff now has re-titled these claims as negligence-based claims, Plaintiff's claims actually sound in professional negligence, as it is claimed that the Penn Defendants, licensed medical providers, failed to assess and ameliorate Plaintiff's sensitivity to anesthesia and deviated from an acceptable standard of care.  The medical malpractice allegations from the original Complaint assert that all Defendants, including unidentified police officers and Penn,[9] were aware of Plaintiff's sensitivity to anesthesia and failed to follow Plaintiff's specific instructions about such sensitivity, thereby causing her to be disoriented and panicked.  (Complaint (doc.1) at ¶¶ 5-6, ¶¶ 56-57, ¶¶ 112-114.)  Now, Plaintiff attempts to circumvent the implications of the representations she made to the Court by bringing forth virtually identical claims cloaked in three different Counts based on the exact same conduct, now calling them "Reckless Conduct" (Count V), "Gross Negligence" (Count VI), and "Negligence" (Count VII).

---

[9] Plaintiff erroneously continues to assert the newly-cast medical malpractice claims against all defendants, including unidentified police officers.

(Compare Complaint (doc. 1) at ¶¶ 111-114 with proposed Second Amended Complaint at ¶¶ 144-156.)

The negligence-based claims clearly arise out of the same alleged medical misconduct – the purported failure to (i) treat Plaintiff's sensitivity to anesthesia, (ii) respect the information Plaintiff conveyed about her recovery, and (iii) treat Plaintiff's difficult recovery completely, without causing her further harm. (Proposed Second Amended Complaint at ¶ 145, ¶ 149, ¶ 153.)  Plaintiff alleges that Defendants "significantly depart[ed] from how a reasonably careful person would act under the circumstances" and "also owed a duty and duties to Ms. Doe to comply with statutory requirements, including properly documenting her medical records and conditions."  (Id. at ¶ 150, ¶ 154.)  Plaintiff's treatment or lack thereof occurred within the course of a professional relationship.  A plain reading of the proposed Second Amended Complaint also makes it clear that the conduct alleged relates to a medical malpractice claim arising from Plaintiff's medical care and treatment, including but not limited to:

- She made the admitting nurse, Dr. Pickett-Blakely, Dr. Randolph, the transporting nurse, and the procedure room staff aware of her sensitivity to anesthesia and the plan for managing it (id. at ¶ 69);
- Defendants could have or should have used hard restraints, medication, and intubation in a "post sedation delirium situation" (id. at ¶ 77);
- "Defendants used no medical treatment procedure.  They denied Ms. Doe medical treatment." (id. at ¶ 79);
- Defendants "failed to provide Ms. Doe with post sedation delirium care" (id. at ¶ 87).

Further, the treatment of individuals suffering from sensitivity reactions to anesthesia facially raises questions of medical judgment well beyond the realm of the common knowledge and experience of a layperson.  As a result, Plaintiff's claims are

13

not ones of ordinary negligence, but medical malpractice.  See Grossman, 868 A.2d

561.  As such, because Plaintiff's re-casted claims of negligence, gross negligence, and

recklessness are merely medical malpractice claims in disguise, and because Plaintiff

failed to file a certificate of merit, Plaintiff should not be permitted to proceed against Dr.

Randolph on Counts V, VI, and VII of the proposed Second Amended.[10]

### 3. Plaintiff Should Not Be Permitted to Proceed Against Dr. Randolph Under Title VII, ADA, or Rehabilitation Act Claims Because Dr. Randolph is an Individual and was Plaintiff's Anesthesiologist and not her Employer.

Dr. Randolph is an individual (as opposed to an entity) and is not Plaintiff's

employer or supervisor.  Rather, he is alleged to be the anesthesiologist who "provided

anesthesia care" to Plaintiff in connection with her colonoscopy on February 20, 2018.

(Doc. 36-2 at ¶ 16.)  Because Title VII and the Rehabilitation Act apply only to

employers, Dr. Randolph cannot be subject to those statutes.  (42 U.S.C. § 2000e, *et

seq.* (prohibiting unlawful employment practices by employers under Title VII); 29

U.S.C. § 701 (prohibiting employers from discriminating against persons with disabilities

in matters of hiring, placement, or advancement under the Rehabilitation Act).

Moreover, as an individual, Dr. Randolph cannot be held individually liable under Title

---

[10] Alternatively, Plaintiff should not be permitted to proceed on Count V because "reckless conduct" is not a separate cause of action from negligence under Pennsylvania law.  See Ferrick Excavating & Grading Co. v. Senger Trucking Co., 484 A.2d 744, 749 (Pa. 1984) (discussing gradations in duty of care and types of negligence); Archibald v. Kemble, 971 A.2d 513, 519 (Pa. Super. Ct. 2009) (concluding that recklessness is not a separate tort, and is subsumed by a negligence claim), appeal denied, 989 A.2d 914 (Pa. 2010).  In Pennsylvania, "recklessness, or willfulness, or wantonness refer to a degree of care."  See Archibald, 971 A.2d at 519.  At its core, a claim for recklessness applies to negligent conduct; thus, even if Plaintiff were to prove that the Penn Defendants acted recklessly, the cause of action still sounds in negligence and cannot be pursued as a separate cause of action.  Id.

VII, the ADA, or the Rehabilitation Act.  Bennett v. Phila., 499 F.3d 281, 286-287 (3d

Cir. Pa. 2007) (imposing no individual liability under Title VII); Fitzpatrick v.

Pennsylvania Dept. of Transp., 40 F. Supp. 2d 631, 636-37 (E.D. Pa. 1999) (imposing

no individual liability under the ADA and Rehabilitation Act).  As such, Plaintiff should

not be permitted to proceed against Dr. Randolph on Counts XVIII (Title VII), XXII (ADA

Title III), or XXIII (Rehabilitation Act).[11]

### 4.  Plaintiff Should Not Be Permitted to Proceed Against Dr. Randolph on her 14th Amendment Claims Because Dr. Randolph is Not a State Actor.

Dr. Randolph, one of the doctors responsible for Plaintiff's care, is a private actor

at a private hospital.  (Doc. 36-2 at ¶ 16; Owens v. Travelers Ins. Co., 675 A.2d 751,

752 (Pa. Super. Ct. 1996) (stating "HUP does not fall within the scope of the term

'governmental authority.'  HUP is a hospital affiliated with the University of

Pennsylvania. At the time of the reporting, HUP was acting as a private employer…");

Trustees of University of Pennsylvania v. International Union of Operating Engineers,

Local 835, No. 90 – 5069, 1991 U.S. Dist. LEXIS 4578, at *1-3 (E.D. Pa. April 1, 1991)

(stating "the [Hospital of the University of Pennsylvania] is a private hospital…").).

Plaintiff is not permitted to assert 14th Amendment Due Process claims against purely

private actors.  Kach v. Hose, 589 F.3d 626, 646 (3d Cir. 2009) ("The Fourteenth

Amendment provides that no state shall deprive any person of life, liberty or property,

without due process of law. The Fourteenth Amendment governs only state conduct, not

---

[11] Even if Plaintiff could pursue employment claims against Dr. Randolph, which she cannot for the reasons set forth above, the claims in the proposed Second Amended Complaint are well outside of the 90-day period to file suit triggered by the EEOC's Dismissal and Notice of Rights letter of May 10, 2019.

that of private citizens.").  Therefore, Plaintiff should not be permitted to proceed against Dr. Randolph in Count XVII (14th Amendment).

### D.  Plaintiff Should Not Be Permitted to Assert Employment or New Constitutional Claims Against Dr. Pickett-Blakely.

According to the proposed Second Amended Complaint, Defendant Dr. Pickett-Blakely was the "doctor in charge of Ms. Doe's care, and on information and belief is an employee of Defendant HUP."  (Doc. 36-2 at ¶ 15.)  Dr. Pickett-Blakely performed Plaintiff's colonoscopy on February 20, 2018.  (Id. at ¶ 61.)  Although Dr. Pickett-Blakely was named in the original Complaint, Plaintiff seeks to add claims against her for an alleged violation of the 14th Amendment (Count XVII).  Like Dr. Randolph, Dr. Pickett-Blakely is an individual and not Plaintiff's employer or supervisor, and therefore, is not subject to Title VII, the ADA, or the Rehabilitation Act.  (See Section II.C.3. above.)  Also like Dr. Randolph, Dr. Pickett-Blakely is a purely private actor – a doctor at HUP who performed Plaintiff's colonoscopy.  (Id.)  As such, Plaintiff should not be permitted to proceed against Dr. Pickett-Blakely on the employment claims set forth in Counts XVIII (Title VII), XXII (ADA Title III), and XXIII (Rehabilitation Act) or the constitutional claim set forth in Count XVII (14th Amendment).

### E.  Plaintiff Should Not Be Permitted to Assert New Claims Against the Original Defendants.

As set forth in Garvin, Plaintiff cannot take advantage of the relation back doctrine for claims that she had knowledge of at the time she filed her original Complaint but chose not to bring at that time.  354 F.3d at 221-22.  See also Glover v. F.D.I.C., 698 F.3d 139, 146-47 (3d Cir. 2012) ("[p]leadings are not like magic tricks, where a plaintiff can hide a claim with one hand, only to pull it from her hat with the

other").  In the original Complaint and Amended Complaint, Plaintiff asserted a multitude of claims against the Penn Defendants, John Doe defendants (medical personnel), and Richard Roe defendants (Penn police officers).  (Docs. 1 and 19.)  In the proposed Second Amended Complaint, Plaintiff seeks to assert additional claims against the original Defendants, including Fourth Amendment and 14th Amendment claims.  (Doc. 36-2 at Counts VIII-XVII.)  Nothing has changed since Plaintiff filed the original Complaint, and Plaintiff has taken no discovery upon she can claim she learned something new about the underlying facts of this case.  The only intervening action is that the Penn Defendants served their Rule 26 self-executing disclosures on March 12, 2020, which disclosures included the witnesses with knowledge of the claims and defenses.  (See Exhibit 1.)  Plaintiff has provided no basis for adding new constitutional claims nearly one year into this litigation, more than three months after the expiration of the statute of limitations, and with only five weeks remaining in discovery.  Accordingly, Plaintiff should be prohibited from asserting new claims against the original Defendants (Counts VIII-XVII).

### F.  Plaintiff Should Not Be Permitted to Assert ADA Title II Claims Against Any of the Defendants.

In Count XXI, Plaintiff asserts a claim against all Defendants based on Title II of the ADA.  While Plaintiff asserted the ADA Title II claim in the original Complaint, that claim was eliminated from the Amended Complaint after letter briefing and a telephonic conference with Judge Goldberg.  (Doc. 9.)  For unexplained reasons, Plaintiff has resurrected the Title II ADA claim in the proposed Second Amended Complaint.  (Doc. 36-2 at Count XXI.)

To prevail on a claim under Title II of the ADA, a plaintiff must prove (1) that the plaintiff is "qualified" or that the plaintiff would be qualified if the defendant made reasonable modifications, (2) that the plaintiff has a "disability," and (3) that "by reason of such disability," the plaintiff was excluded from a service, program, or activity provided by a **public entity**.  McDonald v. Pa. State Police, No. 02:09-cv-00442, 2012 U.S. Dist. LEXIS 155725, *19 (W.D. Pa. Oct. 31, 2012), citing Bowers v. National Collegiate Athletic Association, 475 F.3d 524, 553 n.32 (3d Cir. 2007) (emphasis added). The ADA defines "public entity" as any State or local government; any department, agency, special purpose district, or other instrumentality of a State or States or local government; and The National Railroad Passenger Corporation, and any commuter authority. 42 USCS § 12131. "Instrumentality of state," as used in 42 USCS § 12131(1)(B), refers to governmental units or units created by them.  Langston v. Milton S. Hershey Med. Ctr., No.1:15-CV-02027, 2016 U.S. Dist. LEXIS 48332 (M.D. Pa. Apr. 11, 2016), citing Edison v. Douberly, 604 F.3d 1307, 1310 (11th Cir. 2010), reh'g, en banc, denied, 405 Fed. Appx. 475 (11th Cir. 2010).

Plain and simple, the Penn Defendants are not "public entities" as required to pursue a Title II ADA claim.  Riordan v. Marywood Univ., 2010 U.S. Dist. LEXIS 70475 at *6 (M.D. Pa. June 7, 2010), citing Ellis v. Morehouse Sch. of Med., 925 F. Supp. 1529, 1539 (N.D. Ga. 1996) (private medical school is not "public entity" as that term is defined in Title II of ADA). To the contrary, Penn, HUP, and the Health System are purely private institutions, consistently recognized as such by the federal courts.  Univ. of Penn. v. E.E.O.C., 493 U.S. 182 (1990) (the University of Pennsylvania is a private college in the context of civil rights litigation); Doe v. Trs. of the Univ. of Pa., 270 F.

Supp. 3d 799, 812 (E.D. Pa. 2017) (noting that the right to fundamental fairness does not apply to students at private universities such as the University of Pennsylvania); Pik v. Univ. of Pa., No. 08-5164, 2010 U.S. Dist. LEXIS 107346, at *7 (E.D. Pa. Oct. 7, 2010) (citation omitted) ("Penn is not a state actor for purposes of the plaintiff's § 1983 claims"); Trustees of University of Pennsylvania v. International Union of Operating Engineers, Local 835, 1991 U.S. Dist. LEXIS 4578, at *1-3 (HUP is a private hospital); Robinson v. English Dep't of University, Nos. 87-2476, 87-2554, 1988 U.S. Dist. LEXIS 12622, *14 (E.D. Pa. Nov. 8, 1988) (5th and 14th amendments to Constitution restrict only the conduct of the states and not that of private parties such as the University of Pennsylvania and its employees); Commonwealth v. Banks, 48 A. 277 (Pa. 1901) (describing the University of Pennsylvania as being a purely private corporation or one over which the Commonwealth exercises no control); Owens, 675 A.2d at 752.  And of course, the individuals named as defendants (Dr. Pickett-Blakely, Dr. Randolph, HUP Security Officer Cattolico, HUP Security Officer Chin, Penn Police Officer Denschuick, Penn Police Officer Alexander, and Penn Police Officer DiPallo) are individuals and not entities, let alone "public entities" within the meaning of Title II of the ADA.  (Doc. 36-2 at ¶¶ 15-21.)  Because the Penn Defendants and the individuals are not public entities within the meaning of Title II of the ADA, Plaintiff's claim fails, and the Court should dismiss Count XXI with prejudice.

**III.** **CONCLUSION**

For the foregoing reasons, the Penn Defendants respectfully request that this Court deny Plaintiff's motion entirely or, in the alternative, prohibit Plaintiff from proceeding on newly asserted futile and/or prejudicial claims.  Alternative proposed orders are attached.

Respectfully submitted,

**TUCKER LAW GROUP, LLC**

Dated:  June 5, 2020                     /s/ Leslie M. Greenspan
                                                     Joe H. Tucker, Esquire
                                                     Kathleen Kirkpatrick, Esquire
                                                     Leslie M. Greenspan, Esquire
                                                     Ten Penn Center
                                                     1801 Market Street, Suite 2500
                                                     Philadelphia, PA 19103
                                                     (215) 875-0609
                                                     Attorneys for the Penn Defendants

## <u>CERTIFICATE OF SERVICE</u>

I, Leslie M. Greenspan, Esquire, hereby certify that a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties through their counsel of record by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

**TUCKER LAW GROUP**

Date:  June 5, 2020                 /s/ Leslie M. Greenspan
                                    Leslie M. Greenspan, Esquire